**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 19, 2014**

# In the Court of Appeals of Georgia

A13A2190. TUTTLE v. GEORGIA BOARD OF REGENTS OF
    THE UNIVERSITY SYSTEM OF GEORGIA.

MILLER, Judge.

Garry L. Tuttle sued the Board of Regents of the University System of Georgia

(the "BOR"), alleging that the BOR terminated him in retaliation for his

whistleblower activities in violation of the Georgia Whistleblower Act ("GWA"),

OCGA § 45-1-4. The trial court granted the BOR's motion for summary judgment,

finding that Tuttle filed his claim outside the one-year statute of limitation period and

that there was no evidence that the BOR retaliated against Tuttle for engaging in

protected activity. Tuttle appeals, contending that there are disputed issues of material

fact concerning whether (1) the complaint was barred by the applicable statute of

limitations, (2) he disclosed specific violations of law to the Georgia Perimeter

College ("GPC") administrators, and (3) his termination was a violation of the GWA. For the reasons that follow, we affirm.

> On a motion for summary judgment, it is the movant's burden to show that no jury question remains as to any material fact and that he or she is entitled to judgment as a matter of law. To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant.

(Punctuation, citations, and footnotes omitted.) *Edmonds v. Bd. of Regents of the University System of Ga.*, 302 Ga. App. 1, 2 (689 SE2d 352) (2009).

So viewed, the evidence shows that, Tuttle became GPC's Deputy Chief of Police on August 1, 2007. In the summer of 2008, GPC President Anthony Tricoli discussed the possibility of Tuttle finding a position for a long-time friend Todd Adams, whom Tricoli described as having a criminal record that included several DUI arrests and a domestic violence charge. Tuttle advised Tricoli that, due to Adam's criminal history, Adams could not be hired as a sworn police officer at GPC, he could not become a certified law enforcement officer in Georgia, and, under federal law, he could not carry a gun as a police officer. Tuttle suggested that Tricoli

find another position for Adams. Tuttle sent Adams a background packet, which would have been necessary for further employment, however, Adams did not complete or return the required forms. Nevertheless, in April of 2010, GPC hired Adams into a non-sworn position in Public Safety as interim Emergency Operations Chief.

In September of 2008, a GPC student complained to GPC officials that she was being stalked. A GPC officer investigated the accusations and concluded that they were not supported by probable cause. Tuttle reviewed the case and the investigator's findings, concurring with the investigator that there was no probable cause to believe a crime was committed. Tricoli, GPC Executive Vice President for Financial Administrative Affairs Ronald Carruth and GPC Ombudsman Karen Truesdale became involved in the investigation after the student visited Tricoli to state her belief that GPC police had been looking at her funny and possibly following her around. Tuttle subsequently e-mailed his supervisor, stating that the student was likely exhibiting psychotic behavior and that Tricoli should stay out of police business.

In October of 2008, officers with the GPC Police Department investigated a campus laptop theft and thereafter obtained a warrant to arrest a GPC student. The

3

suspect's mother complained about the actions of the GPC public safety officers to Truesdale, who told the student's mother she would check into the matter. Truesdale then emailed her supervisor, James Rasmus, as well as GPC Police Chief Christopher Albers, Tuttle, Carruth and GPC's legal advisor of the mother's visit and asked for copies of all police reports filed in the matter. Tuttle voiced concerns to Carruth and Truesdale that Truesdale was interfering with Tuttle's criminal case, and that it was improper for her to investigate what he believed were police matters. Carruth considered whether Truesdale's review of GPC Public Safety's handling of the laptop theft investigation and the GPC criminal investigation into the theft could occur simultaneously, and, concluding both investigations should go forward, directed Truesdale to continue her review of GPC Public Safety. Carruth also asked Tuttle and Albers to contact the local district attorney ("DA") to inquire as to whether GPC could make a recommendation in the case, such as whether the suspect's charges could be changed, dismissed, or reduced from a felony to a misdemeanor. Tuttle advised Carruth that prosecutions are solely handled by the DA, and while GPC could inform the DA that the college supported a certain course of action, it could not ask the DA to dismiss the charges.

4

On February 20, 2009 Carruth issued Tuttle two written reprimands for his handling of the stalking incident, referencing concerns over Tuttle's disrespect for the Office of the GPC President and Tuttle's statements regarding the student's mental status.

In April of 2009, Tricoli, Truesdale, Rasmus, and Sheletha Champion, GPC Senior Financial Operations Officer, met to discuss concerns over Tuttle and other GPC Public Safety. It was decided at the meeting that GPC did not want hard-core street cops, and Ms. Champion noted that "Tuttle is not a good fit - he's gotta go [sic]; can't get with the program, too much street cop." Truesdale subsequently advised Rasmus that Tuttle should be told that his leadership style and philosophy are not congruent with the mission of GPC and that, coupled with the need to optimize the limited personnel budget funds, his position would be terminated in order to meet other staffing needs.

On June 2, 2009, Tuttle was advised verbally and in writing that, effective July 31, 2009, the position of Deputy Chief of Public Safety would be eliminated due to an organizational restructuring to improve efficiency and effectiveness. . In August of 2010, Tuttle filed suit against the BOR, claiming that his employment was terminated in retaliation for his refusing to participate in practices of officials acting

5

on behalf of GPC, specifically the laptop investigation, the stalking incident, and the hiring of Adams for the position of Emergency Operations Chief. This appeal ensued.

1. Tuttle argues that the trial court erred in granting GPC summary judgment because there are disputed issues of material fact regarding whether the complaint was filed within the statute of limitations. We disagree.

(a) Tuttle maintains he was not aware he had been retaliated against until the end of 2009, when his former supervisor advised him that GPC had retaliated against him. We disagree.

OCGA § 45-1-4 (a) (5) provides:

"Retaliate" or "retaliation" refers to the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency...

Furthermore,

[a] public employee who has been the object of retaliation. . . may institute a civil action in superior court for relief. . . within one year after discovering the retaliation, or within three years after the retaliation, whichever is earlier.

6

OCGA § 45-1-4 (e) (1).

In this case, resolution of whether Tuttle's complaint was timely turns on the meaning of the phrase "discovering the retaliation." OCGA § 45-1-4 (e) (1). "When a statute contains clear and unambiguous language, such language will be given its plain meaning and will be applied accordingly." (Citations omitted.) *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010).

There is no dispute that, on June 2, 2009, Tuttle discovered that his position was to be terminated effective July 31, 2009. . Although the issue of accrual of a cause of action under the GWA has not been specifically addressed in Georgia, it is well-settled that

> when the question is raised as to whether an action is barred by a statute of limitation, the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result. Mere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitation, for a plaintiff must exercise reasonable diligence to learn of the existence of a cause of action

(Citation and punctuation omitted.) *Sandy Springs Toyota v. Classic Cadillac Atl. Corp.*, 269 Ga. App. 470, 471-472 (1) (604 SE2d 303) (2004).Here, Tuttle's cause of action accrued and the one-year limitation period began to run when Tuttle first

7

discovered the retaliation in question, namely, that his position was to be terminated, on June 2, 2009. See *Stokes v. Savannah State University*, 291 Fed. App'x. 931, 932 (2998 U.S. LEXIS 18624) (11th Cir. 2008) (employee discovered retaliation on the date he received his supervisor's letter of termination, or at the latest on the date the president of the university affirmed the decision to terminate).

(b) Tuttle further contends that the statute was tolled due to fraud. We find his argument unpersuasive.

OCGA § 9-3-96, which provides for the tolling of the applicable limitations period for a defendant's fraud, states that "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."

> Because [OCGA § 9-3-36] provides for a departure from the general rule, requiring actual fraud involving moral turpitude or breach of duty to disclose because of relationship of trust and confidence, and does not toll the statute unless the fraud is distinguishable from that giving rise to cause of action, it must be strictly construed.

*Trust Co. Bank v. Union Circulation Co.*, 241 Ga. 343 (245 S.E.2d 297) (1978).

8

There are two circumstances in which actual fraud will toll the statute of limitation applicable to a cause of action. See *Rai v. Reid*, __ Ga. __, * 9-10 (1) (Case No. S13A1073, decided Nov. 25, 2013). The first is where the actual fraud is the gravamen of the action, and the second is when a separate and independent fraud involving moral turpitude hinders a plaintiff from bringing an action. Id.

Here, the gravamen of Tuttle's action is his termination by the BOR, not an artifice by which the BOR deceived him. Moreover, even if GPC concealed the reasons for Tuttle's termination, Tuttle failed to show that he exercised reasonable diligence in discovering any cause of action. "[T]he plaintiff must have exercised reasonable diligence to discover the cause of action, notwithstanding the failure to discover within the statute of limitation." (Citation and footnote omitted.) *Wilson v. Obstetrics & Gynecology of Atlanta*, 304 Ga. App. 300, 306 (2) (696 SE2d 339) (2010). While Tuttle stated that he was informed by his former supervisor in late November or early December of 2009 that the elimination of Tuttle's position was in fact retaliatory, Tuttle repeatedly acknowledged that he suspected and believed the action to be retaliatory at the time he was informed of the termination of his position. Despite this awareness, Tuttle points to no record evidence showing that he exercised

9

any attempt to discover whether he was being terminated in retaliation for engaging in protected activity. See *Wilson*, supra, 304 Ga. App. at 306 (2).

(c) Further, although Tuttle argues that the 1-year limitation period was tolled by his compliance with the ante-litem notice requirement in the Georgia Tort Claims Act ("GTCA"), his argument is without merit.

The GTCA states that a notice of claim is only required in instances in which a person, firm or corporation has a "tort claim against the state under *this* article."(Emphasis supplied.) OCGA § 50-21-26 (a) (1). Moreover, the right of action provided in the Georgia Whistleblower Act is a waiver of Georgia's sovereign immunity that is separate and independent of the waiver in the Georgia Tort Claims Act. See *Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013) (affirming this Court's holding that OCGA § 45-1-4 sets forth a specific waiver of sovereign immunity); see also *Pattee v. Georgia Ports Auth.*, 477 F. Supp. 2d 1253, 1269 (S.D. Ga. 2006) and *Moore v. Gabriel*, 2005 U.S. Dist. LEXIS 36202, *14-15) (M.D. Ga. 2005). Tuttle's claim was brought under the GWA, which does not contain an *ante litem* notice requirement. Compare OCGA § 45-1-4 with OCGA § 50-21-26 (a) (1). Consequently, we hold that the statute of limitations under the GWA was not tolled while Tuttle's *ante litem* notice was pending.

2. Since Tuttle's complaint was filed outside the statutory limit, we need not consider the issue of whether his complaint stated a claim under the GWA.

*Judgment affirmed. Barnes, P.J. concur, and Ray, J. concur in Judgment only.*