**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 24, 2019**

# In the Court of Appeals of Georgia

A18A2051. THE DEPOSITORY TRUST AND CLEARING CORP.
v. JONES.

A18A2052. AMERIS BANK et al. v. JONES.

MILLER, Presiding Judge.

In this dispute arising from an allegedly mishandled transfer of stock, shareholder Billy N. Jones sued securities depository The Depository Trust and Clearing Corporation ("DTCC"), transfer agent Computershare, Inc., Ameris Bancorp, and Ameris Bank (collectively, "the defendants"), based upon the defendants' alleged failure to "properly maintain and properly exchange" Jones' stock in The Coastal Bank ("Coastal") following Coastal's acquisition by Ameris Bank. DTCC moved to dismiss Jones' complaint for failure to state a claim pursuant to OCGA § 9-11-12 (b) (6), arguing that Jones: (1) had no contractual relationship with DTCC; (2) could not satisfy any element of conversion against DTCC; and (3) had

no right of action against DTCC under the Georgia Uniform Securities Act, OCGA § 10-5-1 et seq. ("the Act"). Computershare, Ameris Bancorp, and Ameris Bank filed a similar motion to dismiss, asserting that Jones failed to state a claim for: (1) violation of the Act; (2) breach of contract; (3) conversion; and (4) negligence. In addition, Ameris Bancorp contended that Jones "waived his ability to commence any action related to the consummation of the merger [between Coastal and Ameris Bank] against Ameris Bancorp." The Superior Court of Liberty County summarily denied both motions to dismiss, but granted each of the parties a certificate of immediate review. Thereafter, we granted the parties' applications for interlocutory appeal, and we have consolidated these cases for decision. We now affirm the trial court's order because we conclude that Jones has satisfied the minimal pleading requirements necessary to survive the defendants' motions to dismiss.

Under Georgia law,

[a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the

2

complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Footnotes omitted.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

To that end,

minimum pleading requirements are found in OCGA § 9-11-8 (a) (2) (A), which requires that the complaint contain "[a] short and plain statement of the claims showing that the pleader is entitled to relief," and we have held that the touchstone is fair notice — "this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading."

(Citations omitted.) *Aetna Workers' Comp Access v. Coliseum Medical Center*, 322 Ga. App. 641, 651 (4) (746 SE2d 148) (2013). Although "[a] trial court's ruling on a motion to dismiss for failure to state a claim is subject to de novo review[,]" *Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, 356 (1) (713 SE2d 456) (2011), we "accept the allegations of fact that appear in the complaint and view those allegations in the

3

light most favorable to the plaintiff." *Bush v. Bank of N. Y. Mellon*, 313 Ga. App. 84, 89 (720 SE2d 370) (2011).

So viewed, Jones alleged that Ameris Bank became the successor to, and surviving entity of, Coastal following Ameris Bank's acquisition of Coastal in June 2014. At the time of the acquisition, Jones owned 61,960 shares of Coastal common stock; as a result of the acquisition, Jones was to receive 28,941.516 shares of Ameris stock. Relevant to these appeals, it appears that, of the 61,960 shares of Coastal common stock owned by Jones, 20,294 shares were "purchased and/or received as dividends or stock splits" titled as "CEDE & Co. Billy N. Jones Beneficial Owner."[1]

At some point, Jones received a statement from Ameris Bancorp and/or Computershare dated August 11, 2015, indicating that the nine stock certificates comprising the 20,294 shares were surrendered on July 21, 2014. Thereafter, Jones

---

[1] "CEDE & Co." was not named as a party in Jones' complaint, nor is its role — or Jones' association with it, if any — explained at any point in the complaint. However, DTCC cited to authorities from foreign jurisdictions which have outlined CEDE & Co.s' role as nominee of The Depository Trust Company ("DTC"), which is itself a subsidiary of DTCC, and as "the direct holder of stock certificates for all of its members which include most securities brokers and dealers in the country. . . ." *Pet Quarters, Inc. v. Depository Trust and Clearing Corp.*, 559 F3d 772, 776 (I) (8th Cir. 2009).

4

received an October 22, 2015 letter from Computershare[2] indicating that "the Deposit Trust Company also known as CEDE and CO. submitted the certificate for exchange and was given the entitlement shares, which were then distributed to the brokerage firms." According to Jones, the 20,294 shares of Coastal stock should have been converted to approximately 9,479 shares of Ameris Bancorp stock, which he never received.

As a result, Jones alleged that he had been "deprived . . . of his rightful ownership" of the 9,479 shares of Ameris Bancorp stock due to the defendants' "individual and collective conduct[,]" and that the defendants failed "to exercise ordinary care in the surrender, transfer, exchange and disbursement" of the shares. Jones then asserted claims of conversion, negligence, breach of contract, and violation of the Georgia Uniform Securities Act. The trial court denied the defendants' motions to dismiss Jones' complaint for failure to state a claim, see OCGA § 9-11-12 (b) (6), and these appeals followed.

*Case No. A18A2051*

---

[2] Contrary to the allegation in Jones' complaint, this letter was not sent by DTCC. In its letter, Computershare identified itself as "the transfer agent for Ameris Bancorp."

1. DTCC argues that Jones' complaint fails to state a claim for breach of contract because it does not identify any contractual relationship, much less reference a specific contract, between Jones and DTCC. Similarly, DTCC contends that Jones cannot establish any element of conversion against DTCC, including (1) Jones' right to possess the shares at issue as against DTCC; (2) DTCC's possession of the shares; (3) a valid demand by Jones against DTCC for return of the shares; and (4) DTCC's refusal to return the shares. Finally, DTCC asserts that the trial court should have granted its motion to dismiss because Jones cannot demonstrate that DTCC owed Jones a duty, under either common law negligence or the Act, and that the Act did not afford Jones a private cause of action against DTCC. After review of Jones' complaint, including Jones' factual allegations coupled with the individual causes of action, and consideration of the liberal notice pleading requirements codified at OCGA § 9-11-8 (a) (2) (A), we cannot conclude that DTCC has demonstrated that Jones "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Anderson*, supra, 267 Ga. at 501 (2).

To the contrary, "the objective of the [Civil Practice Act] is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type

6

of litigation involved; *the discovery process bears the burden of filling in details*."

(Emphasis supplied.) *Dillingham v. Doctors Clinic*, 236 Ga. 302, 303 (223 SE2d 625)

(1976). See also *Osprey Cove Real Estate v. Towerview Constr.*, 343 Ga. App. 436,

443 (6) (808 SE2d 425) (2017); *Campbell v. Ailion*, 338 Ga. App. 382, 384-385 (790

SE2d 68) (2016) ("[I]t is not necessary for a complaint to set forth all of the elements

of a cause of action in order to survive a motion to dismiss for failure to state a

claim[;] [r]ather, the Georgia Civil Practice Act requires only notice pleading and .

. . pleadings are to be construed liberally and reasonably to achieve substantial justice.

. . ."). Indeed, as we noted with approval in *Osprey Cove*, "basic discovery should

eliminate any uncertainty about the basis of [Jones'] claims." 343 Ga. App. at 443 (6).

For example, evidence developed through discovery may establish, inter alia, a

contractual agency relationship between certain defendants for Jones' benefit and the

existence of a duty by DTCC to "properly maintain and properly exchange" Jones'

stock in Coastal following Coastal's acquisition by Ameris Bank. Accordingly, we

affirm the trial court's denial of DTCC's motion to dismiss.

*Case No. A18A2052*

2. Ameris Bancorp contends that Jones "expressly waived any claims against

[it] relating to the consummation of the merger [with Coastal]" by executing a

7

Shareholder Voting Agreement that provides, in part, that Jones agreed "not to commence or participate in . . . any claim, derivative or otherwise, against Ameris [Bancorp], Coastal or any of their respective successors relating to the negotiation, execution or delivery of this Agreement or the Merger Agreement or the consummation of the Merger." Jones asserts that the provision simply precludes him from participating in a class action against Ameris Bancorp. The trial court summarily denied the Ameris Defendants' motion to dismiss. We find no error because this clause does not preclude Jones' right to sue for conduct unrelated to the completion of the Shareholder Voting Agreement and the Merger Agreement.

"Generally, contract construction is a question of law that we review de novo." (Citations omitted.) *Comm. & Southern Bank v. First Bank*, 338 Ga. App. 341, 343 (790 SE2d 80) (2016). To that end, "[t]he cardinal rule of contract construction is to ascertain the intention of the parties. When the terms of a contract are clear and unambiguous, this Court looks only to the contract itself to determine the parties' intent, and we give the contract terms an interpretation of ordinary significance." (Citations omitted.) Id.

> Further, the construction which will uphold a contract in whole and in
> every part is to be preferred, and the whole contract should be looked to

8

in arriving at the construction of any part. Moreover, no construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.

(Citation omitted.) *Megel v. Donaldson*, 288 Ga. App. 510, 513 (1) (654 SE2d 656) (2007).

In this case, we need not resort to the rules of contract construction because the parties' agreement is clear and unambiguous. As noted, Section 13 of the Shareholder Voting Agreement between Jones and Ameris Bankcorp[3] provides that Jones may not "commence or participate in, and to take all actions necessary to opt out of any class in any class action with respect to, any claim, derivative or otherwise," against Ameris Bancorp "relating to the negotiation, execution or delivery of this Agreement or the Merger Agreement or the consummation of the Merger." It is therefore clear that Jones may not "commence or participate in" certain actions against Ameris Bancorp; such actions include "any claim . . . relating to the negotiation, execution or delivery of [the Shareholder Voting] Agreement or the Merger Agreement or the

---

[3] The Shareholder Voting Agreement further provided that "Ameris and Coastal propose to enter into an Agreement and Plan of Merger, dated as of the date hereof (the "Merger Agreement". . .), pursuant to which, among other things, Coastal will merge with and into Ameris (the "Merger"). . . ."

9

consummation of the Merger." However, Ameris Bancorp does not argue that Jones' action is related "to the negotiation, execution or delivery of [the Shareholder Voting] Agreement or the Merger Agreement. . . ."; rather, it contends that Jones' claim that "Ameris Bancorp violated duties that it supposedly owed [Jones] by failing to transfer control of Ameris Bancorp shares to him as part of the merger" is related to the "consummation of the merger."

"Consummation" is defined as "finish, complete." Webster's Ninth New Collegiate Dictionary, p. 282 (1991). See, e.g., *California DHI, Inc. v. Erasmus*, No. 04-cv-1566-MSK-CBS, 2008 U.S. Dist. LEXIS 27233, *11 (D. Colo. Mar. 26, 2008) ("The term 'consummation' is not defined in the statute, but the common dictionary definition of that word is 'the action of completing [or] finishing' something. In other words, a 'plan of merger' is 'consummated' when the 'plan' is completed and the merger is accomplished.") (citation omitted). Moreover, of particular interest, Section 1 (b) of the Shareholder Voting Agreement describes Jones' duties under the agreement, including the requirement that he

> vote (or cause to be voted), in person or by proxy, all the Shares that are beneficially owned by Shareholder . . . (i) in favor of adoption and approval of the Merger Agreement and the transactions contemplated thereby. . .; and (iii) against any Acquisition Proposal or any other

10

action, agreement or transaction that is intended to . . . impede, interfere or be inconsistent with, delay, postpone, discourage or materially and adversely affect consummation of the transactions contemplated by the Merger Agreement or this Agreement.

Accordingly, the plain language of Section 13 of the Shareholder Voting Agreement reveals that it was the parties' intention that Jones waive any claims, whether individually or as a member of a class, related to the preparation of the merger agreements or to the completion or effectuation of the merger itself, and not to any claim for which Jones may have a cause of action *resulting from* the merger.[4] To that end, the acts underlying Jones' causes of action for the allegedly mishandled stock transfer could only occur after the merger between Ameris Bancorp and Coastal had been consummated.[5] For example, if the proposed merger between Ameris Bancorp and Coastal failed, through no effort of Jones, at some point after Jones executed the Shareholder Voting Agreement, no stock transfer would have been necessary. It necessarily follows that Jones' complaint does not "relat[e] to the

---

[4] For the reasons stated herein, Jones' argument that this restriction is limited to class actions is unfounded.

[5] Of note, the Shareholder Voting Agreement became effective on March 10, 2014, while the merger became effective June 30, 2014 and Jones' stock transfer did not occur until a later date (possibly as early as July 21, 2014).

11

negotiation, execution or delivery" of the merger agreements or to "the consummation of the Merger" because the complaint cannot be construed as an effort to interfere with the merger. Therefore, we conclude that the trial court properly denied Ameris Bancorp's motion to dismiss.

3. In four enumerations of error, Computershare, Ameris Bancorp, and Ameris Bank (the "Ameris Bank Defendants") assert that the trial court erred in failing to dismiss Jones' causes of action for violation of the Georgia Uniform Securities Act, conversion, breach of contract, and negligence. For the reasons stated in Division 1, supra, we conclude that the Ameris Bank Defendants have not shown that Jones "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Anderson*, supra, 267 Ga. at 501 (2). See also *Dillingham*, supra, 236 Ga. at 303; *Osprey Cove*, supra, 343 Ga. App. at 443 (6); *Campbell*, supra, 338 Ga. App. at 384-385. We therefore affirm the judgment of the trial court.

*Judgments affirmed. Brown and Goss, JJ., concur.*