# THIRD DIVISION
## DILLARD, C. J.,
## RICKMAN and HODGES, JJ.

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 27, 2019**

# In the Court of Appeals of Georgia

A19A0006. BOARD OF REGENTS OF THE UNIVERSITY   HO-001
SYSTEM OF GEORGIA v. ONE SIXTY OVER NINETY,
LLC.

A19A0007. ONE SIXTY OVER NINETY, LLC v. BOARD OF   HO-002
REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA.

HODGES, Judge.

In these interrelated appeals arising from a procurement, we must decide whether a claim under the Georgia Trade Secrets Act of 1990 (OCGA § 10-1-760 et seq.) is available against a state entity under either that statute or the Georgia Tort Claims Act (OCGA § 50-21-20 et seq.) or whether such a claim is barred by sovereign immunity. If a claim is allowed, we must then decide if One Sixty Over Ninety, LLC's ("One Sixty") claim can survive a motion to dismiss filed by the Board of Regents of the University System of Georgia (the "Board"). See OCGA § 9-11-12 (b) (6).

One Sixty sued the Board for a violation of the Trade Secrets Act after an employee of the University of Georgia distributed certain of One Sixty's materials, submitted to UGA in response to a request for proposal, to a competitor. The Board moved to dismiss One Sixty's complaint, arguing that the complaint was barred by sovereign immunity and, alternatively, that One Sixty failed to state a claim for relief because the materials distributed by UGA were not "trade secrets" as defined by the Trade Secrets Act.

The Superior Court of Clarke County denied the Board's motion, finding that a litigant may bring an action for a violation of the Trade Secrets Act under the Tort Claims Act, through which the state waived its sovereign immunity, and that it could not find as a matter of law that One Sixty's materials were not trade secrets. The trial court issued a certificate of immediate review, and we granted the Board's application for interlocutory appeal. One Sixty then filed a cross-appeal in which it argued that the trial court erred in finding that there was no express or implied waiver of sovereign immunity in the Trade Secrets Act. We have consolidated these cases for decision on appeal and, for the following reasons, we affirm the trial court's judgment in both cases.

As a threshold matter, "[t]he trial court's ruling on [a] motion to dismiss on sovereign immunity grounds is reviewed de novo, while factual findings are sustained if there is evidence supporting them." (Citation omitted.) *Ambati v. Bd. of Regents of the Univ. System of Ga.*, 313 Ga. App. 282, n. 3 (721 SE2d 148) (2011); see also OCGA § 9-11-12 (b) (1). Similarly, "[w]e review de novo a trial court's determination that a pleading fails to state a claim upon which relief can be granted, construing the pleadings in the light most favorable to the plaintiff and with any doubts resolved in the plaintiff's favor." (Citation and punctuation omitted.) *Babalola v. HSBC Bank USA, N.A.*, 324 Ga. App. 750 (751 SE2d 545) (2013); see also OCGA § 9-11-12 (b) (6).

So viewed, One Sixty's verified complaint[1] alleged that it is a creative services agency that provides branding, strategy, design, public relations, and other services to a variety of clients, including institutions of higher education. Between June and December 2015, representatives of UGA and One Sixty corresponded concerning an upcoming request for proposal for a branding initiative. During the course of these communications, UGA's representative asked One Sixty for information to assist it

---

[1] "[A] verified complaint serves as both pleading and evidence." (Citation omitted.) *BEA Systems v. Webmethods, Inc.*, 265 Ga. App. 503, 504 (595 SE2d 87) (2004).

in the preparation of the request for proposal and confirmed that One Sixty's responsive information would remain confidential. Finally, in December 2015, UGA asked One Sixty to present a webcast to UGA's Strategic Brand Initiative Committee (the "Committee"). UGA notified One Sixty that the webcast would be recorded so that Committee members who could not be physically present for the meeting would be able to view the presentation. In January 2016, One Sixty made a presentation to the Committee by webcast.

Thereafter, UGA sent One Sixty a request for proposal for the "Strategic Brand Initiative for a Comprehensive Capital Campaign" (the "RFP" or the "Capital Campaign"). One Sixty provided its written proposal in response to the RFP, marked "Confidential & Proprietary," in February 2016. According to One Sixty, its proposal included "confidential information concerning [One Sixty's] proprietary methods, approach, personnel structuring, and pricing." One Sixty also made a live on-campus presentation to the Committee, which was recorded for the benefit of members of the Committee who could not be present. In addition to the confidential information included in its proposal, One Sixty's live presentation contained "creative samples, which disclose [One Sixty's] proprietary method of deploying such sample." One Sixty alleged that it agreed to the recording of its presentation "based on the

4

assurances by UGA that the video would be used solely to show [One Sixty's] presentation to absent Committee members." There is no allegation in One Sixty's complaint that its initial webcast presentation or its recorded on-campus presentation were initially identified as confidential or as trade secrets.

Ultimately, UGA selected Ologie, LLC, a direct competitor with One Sixty in the higher education community, as the creative services agency for the Capital Campaign. In March 2016, One Sixty learned that UGA shared with Ologie One Sixty's initial webcast presentation, recorded on-campus presentation, "and a curated selection of [One Sixty's] creative work samples in a proprietary new business format" as "examples of work from other vendors[.]" (Punctuation omitted.) One Sixty alleged that Ologie used One Sixty's confidential information in other proposals for which the two companies competed, resulting in losses to One Sixty.[2] After it learned UGA shared the presentations, One Sixty "had multiple discussions with UGA regarding the extent to which the [confidential] [i]nformation was disclosed and the need to maintain its confidentiality as a trade secret." One Sixty also then

_____

[2] In support of its argument that its webcast and on-campus presentations were confidential, One Sixty's complaint offered additional details of the companies' acrimonious relationship, including litigation in Ohio and Ologie's attempt to access One Sixty's response to an RFP in Texas.

5

"submitted an affidavit to UGA in accordance with OCGA § 50-18-72 attesting to the trade secret nature of the [condfidential] [i]nformation to prevent its possible disclosure in response to an open records request."[3]

As a result of the disclosure of its information, One Sixty sued the Board under the Tort Claims Act for a violation of the Trade Secrets Act. The Board moved to dismiss One Sixty's complaint (1) for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1), because the Board's sovereign immunity had not been waived by the Trade Secrets Act; and (2) for failure to state a claim for relief pursuant to OCGA § 9-11-12 (b) (6), arguing that the presentations at issue are not trade secrets as a matter of law because One Sixty failed to protect the confidentiality of the information by designating the presentations as "trade secrets" by submitting an affidavit as required by OCGA § 50-18-72 (a) (34). The trial court denied the Board's motion, concluding that (1) while the Trade Secrets Act does not contain an express or implied waiver of sovereign immunity, a violation of the Trade Secrets Act constitutes a tort that is actionable under the Tort Claims Act; and (2) it could not find

---

[3] One Sixty also detailed the steps it now takes to protect recordings of its presentations, including obtaining an agreement "that the recording will not be disseminated beyond the . . . committee, . . . that it will also be destroyed," and requiring proof of the destruction of the recording.

6

"as a matter of law that [One Sixty's confidential] information at issue is not a trade secret simply because there was no affidavit attached to it." The trial court issued a certificate of immediate review to the Board, and we granted the Board's application for interlocutory appeal. The appeal and cross-appeal of the Board and One Sixty, respectively, followed.

*Case No. A19A0007*[4]

1. In a single enumeration of error, One Sixty argues that the trial court erred in concluding that the Trade Secrets Act does not contain a waiver of sovereign immunity. Specifically, One Sixty contends that because the Trade Secrets Act defines a "person" as, in part, a "government [or] governmental subdivision or agency[,]" and that "a person is entitled to recover damages for misappropriation" of a trade secret, the Trade Secrets Act waives sovereign immunity. OCGA §§ 10-1-761 (3); 10-1-763 (a). We are not persuaded.

---

[4] Because "sovereign immunity is an immunity from suit, rather than a mere defense to liability, and therefore, whether a governmental defendant has waived its sovereign immunity is a threshold issue[,]" we will address One Sixty's cross-appeal first. (Citation omitted.) *Douglas v. Dept. of Juvenile Justice*, 349 Ga. App. 10, 14 (2), n. 12 (825 SE2d 395) (2019); see also *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985) ("For convenience of discussion, we have taken the enumerated errors out of . . . order. . .").

In its order denying the Board's motion to dismiss, the trial court initially stated that "[t]here is no dispute that the [Trade Secrets Act] itself does not contain an express waiver of sovereign immunity[.]" The trial court then rejected One Sixty's argument that the Trade Secret Act's use of "person," defined in part as a "government [or] governmental subdivision or agency," created "an implied right of action against the government."

As a threshold matter, "[t]he doctrine of sovereign immunity shields the state from suits seeking to recover damages [because] . . . the primary purpose of sovereign immunity is to protect state coffers." *In the Interest of A. V. B.*, 267 Ga. 728 (1) (482 SE2d 275) (1997). Therefore, "[t]he sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). Such a waiver must be specific because "[t]he state is not bound by the passage of a law unless it is named therein or unless the words of the law are so plain, clear, and unmistakable as to leave no doubt as to the intention of the General Assembly." OCGA § 1-3-8.[5]

---

[5] Although mentioned in a footnote in a trial court brief, One Sixty now meaningfully argues in its reply brief that the 1991 amendment to the sovereign immunity provision of the Georgia constitution effectively superseded OCGA § 1-3-

8

However, "[t]his does not mean . . . that the Legislature must use specific 'magic words' such as 'sovereign immunity is hereby waived' in order to create a specific statutory waiver of sovereign immunity." (Citations omitted.) *Colon v. Fulton County*, 294 Ga. 93, 95 (1) (751 SE2d 307) (2013), overruled on other grounds, *Rivera v. Washington*, 298 Ga. 770, 778, n. 7 (784 SE2d 775) (2016). For example, our Supreme Court found that Georgia's whistleblower statute, OCGA § 45-1-4, waived the State's sovereign immunity for claims brought against a "public employer," partially defined as "the executive, judicial, or legislative branch of the state . . . or any local or regional governmental entity that receives any funds from the State of Georgia[.]" *Colon*, supra, 294 Ga. at 95-96 (1). In contrast, however, we have determined that the "Georgia RICO Act does not express any waiver of sovereign immunity" despite the fact that its definition of "enterprise" includes "governmental

8. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e); see also *Reece v. Chestatee State Bank*, 260 Ga. App. 136, 140 (1) (579 SE2d 11) (2003) ("[M]erely mentioning an issue in the trial court without obtaining a ruling is not raising it so as to preserve the issue for appellate review."). Nevertheless, One Sixty has failed to demonstrate how the revised constitutional provision mandates a different result, as both it and OCGA § 1-3-8 require explicit waivers of sovereign immunity. Stated differently, with regard to the need for specificity in waiving sovereign immunity, the Georgia constitution merely states explicitly what is implicit in the application of OCGA § 1-3-8. Furthermore, we have cited OCGA § 1-3-8 with approval as recently as 2010, well after the 1991 amendment to our constitution. See *Moreland v. State*, 304 Ga. App. 468, 470, n. 1 (696 SE2d 448) (2010).

as well as other entities." OCGA § 16-14-3 (3); *Tricoli v. Watts*, 336 Ga. App. 837, 840 (4) (783 SE2d 475) (2016).

Here, the parties do not dispute that the Trade Secrets Act does not contain an express waiver of sovereign immunity.[6] We further conclude that the act also does not waive the state's sovereign immunity by implication. At the outset, "implied waivers of governmental immunity should not be favored." (Punctuation and citation omitted.) *Colon*, supra, 294 Ga. at 95 (1). Furthermore, statutes "providing for a waiver of sovereign immunity are in derogation of the common law and thus are to be strictly construed *against* a finding of waiver." (Citation omitted; emphasis supplied.) *Gish v. Thomas*, 302 Ga. App. 854, 860 (2) (691 SE2d 900) (2010).

---

[6] As we have discussed, the trial court found that "[t]here is no dispute that the [Trade Secrets Act] itself does not contain an express waiver of sovereign immunity[,]" and neither party has challenged this specific ruling. Nevertheless, we emphasize that other statutes confirm that the General Assembly could have included an express waiver of sovereign immunity had it so intended. See, e.g., OCGA § 50-21-1 (a) ("The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract . . . entered into by the state, departments and agencies of the state, and state authorities."); § 50-21-23 (a) ("The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope or their official duties or employment. . ."); *Sawnee Elec. Membership Corp. v. Dept. of Revenue*, 279 Ga. 22, 23 (2) (608 SE2d 611) (2005) ("The statutory authorization to bring an action for a tax refund in superior court against a [county or municipality] is an express waiver of sovereign immunity. . .") (citing *City of Atlanta v. Barnes*, 276 Ga. 449, 451 (3) (578 SE2d 110) (2003)).

10

In this case, although the Trade Secrets Act defines a "person," in relevant part, as a "government [or] governmental subdivision or agency[,]" nothing in the act sufficiently identifies the state or any of its departments to waive the state's sovereign immunity by implication. See OCGA § 1-3-8; *Tricoli*, supra, 336 Ga. App. at 840 (4); compare *City of Union Point v. Greene County*, 303 Ga. 449, 454 (1) (a) (812 SE2d 278) (2018) (where "*only potential parties* to an action under OCGA § 36-70-25.1 *are counties and affected municipalities*[, the statute] can only be interpreted as creating a waiver of sovereign immunity") (emphasis supplied);[7] *Colon*, supra, 294 Ga. at 95-96 (1) (whistleblower statute waived sovereign immunity where "public employer" defined, in part, as "the executive, judicial, or legislative branch *of the state* … or any local or regional governmental entity that receives any funds from the State of Georgia") (emphasis supplied); OCGA § 45-19-22 (5) (Fair Employment Practices Act of 1978 defines "[p]ublic employer" as "any department, board, bureau, commission, authority, or other agency *of the state*") (emphasis supplied).[8]

---

[7] Accord *City of Atlanta v. Barnes*, 276 Ga. 449, 451-452 (3) (578 SE2d 110) (2003) (sovereign immunity waived where tax refund statute provided right of action against "the governing authority of the *county or municipality*") (emphasis supplied), superseded by statute on other grounds, *Sawnee Elec.*, supra, 279 Ga. at 25 (3), n. 1.

[8] Pretermitting that One Sixty failed to cite *Doe v. Bd. of Regents of the Univ. System of Ga.* until its reply brief, that case stands for the unremarkable proposition

Accordingly, in analyzing this case against existing precedent, we conclude that the language of the Trade Secrets Act defining "person" most closely resembles the language of the RICO Act defining "enterprise," which we determined did not contain a waiver of the State's sovereign immunity. See *Tricoli*, 336 Ga. App. at 840 (4). The General Assembly, in enacting the Trade Secrets Act, certainly could have included "state" or identified the branches of state government in its definition of "person" to make plain its intention that the state's sovereign immunity should be waived.[9] See, e.g., *Colon*, supra, 294 Ga. at 95-96 (1). The fact that it did not is significant. See, e.g., *West v. City of Albany*, 300 Ga. 743, 745 (797 SE2d 809) (2017) ("We . . . presume that when enacting a statute the General Assembly meant what it said and said what it meant.") (citation and punctuation omitted); compare OCGA § 16-1-3 (12) (definition of "person" in Criminal Code of Georgia includes

_____

that the Open Records Act applies to the Board. 215 Ga. App. 684, 686 (1) (452 SE2d 776) (1994). Because *Doe* does not address a potential waiver of sovereign immunity, One Sixty's reliance upon *Doe* is misplaced.

[9] In fact, the General Assembly adopted the definition of "person" from the Uniform Trade Secrets Act without revision. Compare OCGA § 10-1-761 (3) with Uniform Trade Secrets Act with 1985 Amendments, available at https://www.uniformlaws.org/viewdocument/final-act-with-comments-89?CommunityKey=3a2538fb-e030-4e2d-a9e2-90373dc05792&tab=librarydocuments (last visited May 28, 2019).

"government," which is itself defined in OCGA § 16-1-3 (8) as "the United States, *the state*, any political subdivision thereof, or any agency of the foregoing") (emphasis supplied).

In sum, because the Trade Secrets Act does not contain any language expressly waiving the state's sovereign immunity, and the words of the Act are not "so plain, clear, and unmistakable as to leave no doubt as to the intention of the General Assembly"[10] that waiver of sovereign immunity may be implied, or was even intended, we affirm the judgment of the trial court that the Trade Secrets Act neither expressly nor impliedly waived the state's sovereign immunity.[11]

*Case No. A19A0006*

---

[10] OCGA § 1-3-8.

[11] We need not address the parties' arguments concerning whether "government" and "government subdivision or agency," as used in the Trade Secrets Act, are restricted to local governments only. To the extent this issue was timely raised below, the trial court did not specifically rule on it. Therefore, because we have addressed the only relevant issue presented in this appeal — that is, whether the Trade Secrets Act waives the *state's* sovereign immunity — any further discussion would be advisory. See, e.g., *State v. Adams*, 209 Ga. App. 141, 142 (2) (433 SE2d 355) (1993) ("Absent a specific ruling by the trial court as to the exact [issue], there is nothing for us to review. This court does not render advisory opinions. We normally limit our rulings to the specific case or controversy decided by the trial court, and do not venture an opinion as to the legality of future actions which may or may not occur.") (citations and punctuation omitted).

2. In its first enumeration of error, the Board contends that the trial court erred in determining that, despite the absence of an express or implied waiver of sovereign immunity in the Trade Secrets Act, a litigant may bring such a claim against a state entity pursuant to the Tort Claims Act. After review of the Trade Secrets Act and what constitutes a tort under Georgia law, we agree with the trial court.

In the order under review, the trial court first looked to dictionary and statutory definitions of "tort" before examining the history of the Uniform Trade Secrets Act. Next, the trial court analyzed the nature of the claims available under the Georgia Trade Secrets Act. As a result, the trial court concluded that a violation of the Trade Secrets Act "is . . . a tort claim" and that the Trade Secrets Act "does not preclude a [Trade Secrets Act] claim brought under the [Tort Claims Act]."

Under our law,

> A motion to dismiss asserting sovereign immunity is based upon the trial court's lack of subject matter jurisdiction, rather than the merits of the plaintiff's claim. Sovereign immunity is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case, and waiver of sovereign immunity must be established by the party seeking to benefit from that waiver. . .

14

*Ambati*, supra, 313 Ga. App. at 282, n. 3; see also OCGA § 9-11-12 (b) (1). In this case, One Sixty "had the burden of establishing waiver of sovereign immunity." *Ambati*, supra, 313 Ga. App. at 282, n. 3.

To that end, Georgia law generally defines a "tort" as an "unlawful violation of a private legal right other than a mere breach of contract, express or implied." OCGA § 51-1-1. "A tort may also be the violation of a public duty if, as a result of the violation, some special damage accrues to the individual." Id. The Trade Secrets Act, adopted by the General Assembly in 1990, provides that

a person is entitled to recover damages for misappropriation.[12] Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. If neither damages nor unjust enrichment caused by the misappropriation are proved by a preponderance of the evidence, the court may award damages caused by misappropriation measured in terms of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret for no longer than the period of time for which use could have been prohibited.

---

[12] "Misappropriation" is defined in OCGA § 10-1-761 (2) and means, in pertinent part, a "[d]isclosure or use of a trade secret of another without express or implied consent by a person who:

[. . .]

(ii) [a]t the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

[. . .]

(II) [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) [b]efore a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

OCGA § 10-1-763 (a). A "trade secret" means "information, without regard to form . . . which is not commonly known by or available to the public and which information:

> (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

OCGA § 10-1-761 (4); see also *Dept. of Natural Resources v. Theragencis Corp.*, 273 Ga. 724, 725 (545 SE2d 904) (2001). Of note, the Trade Secrets Act "supersede[s] *conflicting* tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." (Emphasis supplied.) OCGA § 10-1-767 (a). Thus, we conclude that a violation of the Trade Secrets Act constitutes a tort under Georgia law.[13] Compare OCGA § 10-1-760 et seq. with Va. Code Ann. § 59.1-336

---

[13] Prior to the passage of the Trade Secrets Act, Georgia law recognized the common law tort of misappropriation of trade secrets. See generally *Monumental Properties of Ga. v. Frontier Disposal, Inc.*, 159 Ga. App. 35, 37-38 (3) (282 SE2d 660) (1981) (describing common law action of misappropriation of trade secrets). However, contrary to the Board's argument, that the Trade Secrets Act superseded the common law tort of misappropriation does not establish that tortious conduct which

17

et seq.; see also *United States Marine, Inc. v. United States*, Case No. 08-2571 SECTION "J" (3), 2010 U. S. Dist. LEXIS 32049, *12 (4) (E. D. La. 2010) ("Misappropriation of a trade secret is a statutory tort in Virginia under its version of the Uniform Trade Secrets Act. . .").

With regard to torts committed by a state actor, the Tort Claims Act provides that

> [t]he state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article.

---

would have given rise to an action at common law is no longer tortious conduct under the statute. See OCGA § 10-1-763; *Virginia Elec. & Lighting Corp. v. Nat. Svc. Indus.*, Case No. 99-1226, 2000 U. S. App. LEXIS 131, *10 (I) (Fed. Cir. 2000) (noting that *Monumental Properties* had been superseded by statute, in part, because Trade Secrets Act required "that the alleged trade secret have been subject to reasonable efforts to maintain its secrecy"). Moreover, the Board's argument that a Trade Secrets Act violation is a statutory remedy rather than a tort is belied by other common law torts which have been codified. See, e.g., OCGA §§ 51-7-20 (false imprisonment); 51-7-85 (abusive litigation).

18

OCGA § 50-21-23 (a). OCGA § 50-21-24 includes a list of thirteen exceptions to the state's waiver of sovereign immunity, none of which include actions based upon the misappropriation of trade secrets.[14]

Accordingly, because a violation of the Trade Secrets Act constitutes a tort under Georgia law, and the state has waived its sovereign immunity for torts committed by state actors unless there is a relevant exception, we conclude that a litigant may bring a cause of action for a violation of the Trade Secrets Act against

---

[14] Unlike other states that have adopted the Uniform Trade Secrets Act, and which included provisions to protect the state's sovereign immunity and shield state actors from liability for the misappropriation of trade secrets, Georgia has not done so. See, e.g., Md. Code Ann. § 11-1207 (b) (2) ("Nothing contained in this act may be applied or construed to waive or limit any common law or statutory defense or immunity possessed by State personnel. . ."); but see Me. Rev. Stat. Ann. Title 10, § 1548 (1) (E) (Trade Secrets Act "does not affect . . . [t]he provisions of the Maine Tort Claims Act"); N. J. Stat. Ann. § 56:15-9 (c) ("In any action for misappropriation of a trade secret brought against a public entity or public employee, the provisions of the "New Jersey Tort Claims Act" . . . shall supersede any conflicting provisions of this act."); Or. Rev. Stat. 646.473 (3) ("Notwithstanding any other provision in ORS 646.461 to 646.475, public bodies and their officers, employees and agents are immune from any claim or action for misappropriation of a trade secret that is based on the disclosure or release of information in obedience to or in good faith reliance on any order of disclosure issued pursuant to ORS 192.410 to 192.490 or on the advice of an attorney authorized to advise the public body, its officers, employees or agents.").

a state actor pursuant to the Tort Claims Act.[15] Therefore, we affirm the trial court's judgment on this issue.

3. Next, the Board asserts that the trial court erroneously held that One Sixty's complaint "sufficiently state[d] a claim for misappropriation of trade secrets under the [Trade Secrets Act]." The trial court concluded that One Sixty "identified efforts it undertook to maintain the secrecy of the information" and that "[t]he reasonableness of said efforts cannot be resolved on a motion to dismiss." On appeal, the Board

---

[15] In other words, as found by the trial court, we agree that the Tort Claims Act is a means to bring a tort action against a state actor rather than an independent cause of action. *Tuttle v. Bd. of Regents of the Univ. System of Ga.*, cited by the Board, does not compel a different result. 326 Ga. App. 350, 355 (1) (c) (756 SE2d 585) (2014) (physical precedent only). Setting aside that *Tuttle* is not binding precedent, we held that the Georgia whistleblower statute provided a cause of action separate from the Tort Claims Act, such that a party need not comply with the additional requirements of the Tort Claims Act in an action against a state actor. Id. We based our conclusion on the fact that the whistleblower act contains a waiver of sovereign immunity separate from the Tort Claims Act, which we have discussed in Division 1, supra. Id. Because the Trade Secrets Act supplies a cause of action but does not contain an independent waiver of sovereign immunity, litigants must bring claims for violations of Trade Secrets Act against state actors under the Tort Claims Act. Therefore, *Tuttle* is inapposite.

Similarly, the Board's argument that the more-specific Trade Secrets Act should control over the more-general Tort Claims Act is misplaced because, as we have observed, the two statutes are not inconsistent. See *Hospital Auth. of Gwinnett County v. State Health Planning Agency*, 211 Ga. App. 407, 408 (2) (438 SE2d 912) (1993).

argues that One Sixty failed to "take reasonable measures to protect its trade secrets as a matter of law" and, as a result, failed to state a claim for relief. We disagree.

Under Georgia law,

[a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation omitted.) *Depository Trust & Clearing Corp. v. Jones*, 348 Ga. App. 474, 475 (823 SE2d 558) (2019). Stated differently, "a motion to dismiss for failure to state a claim should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof." *Babalola*, supra, 324 Ga. App. at 752 (2). To that end,

21

minimum pleading requirements are found in OCGA § 9-11-8 (a) (2) (A), which requires that the complaint contain a short and plain statement of the claims showing that the pleader is entitled to relief, and we have held that the touchstone is fair notice — "this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading."

(Citation and punctuation omitted.) *Depository Trust*, supra, 348 Ga. App. at 475. "Although a trial court's ruling on a motion to dismiss for failure to state a claim is subject to de novo review, we accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff." (Citations and punctuation omitted.) Id.

Here, One Sixty alleged that a UGA representative indicated to it that the information One Sixty provided to assist UGA in developing the RFP "would be kept confidential"; that One Sixty made a webcast presentation to the Committee prior to the issuance of the RFP; that One Sixty's proposal in response to the RFP was marked "Confidential & Proprietary"; that One Sixty made a live on-campus presentation at UGA; that the webcast and on-campus presentations were recorded; that One Sixty agreed to the recording of its presentations "based on the assurances by UGA that the video would be used solely to show [One Sixty's] presentation to absent Committee

22

members[;]" that UGA shared with Ologie, the successful RFP applicant, recordings of One Sixty's webcast and on-campus presentations; that Ologie has used the confidential information "for its own monetary gain, causing damage to [One Sixty];" and that the confidential information "is not commonly known or available to the public and derives economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use."

Particularly relevant to this case, One Sixty further alleged that it had taken "efforts that are reasonable under the circumstances to maintain the secrecy" of the confidential information because (1) its own computers "utilize password protection and are only accessible by employees with a need to view" the confidential information; (2) its own employees sign "an employment agreement, an employee handbook, and a separate confidentiality agreement"; and (3) its proposal in response to the RFP was marked "Confidential & Proprietary." In response to the disclosure of its information to Ologie, One Sixty

> had multiple discussions with UGA regarding the extent to which the [confidential information] was disclosed and the need to maintain its confidentiality as a trade secret. [One Sixty] . . . also submitted an affidavit to UGA in accordance with OCGA § 50-18-72 attesting to the

23

trade secret nature of the [confidential information] to prevent its possible disclosure in response to an open records request. Since learning of this incident, [One Sixty] has also requested a prospective client that sought to record [One Sixty's] presentation not only to agree that the recording will not be disseminated beyond the search committee, but that it will also be destroyed, and [One Sixty] required verification of the same.

One Sixty also referenced efforts in other states to prevent the disclosure of its confidential information.

As we noted in Division 1, supra, a "trade secret" means "information, without regard to form . . . which is not commonly known by or available to the public and which information:

(A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(B) *Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy*."

(Emphasis supplied.) OCGA § 10-1-761 (4). Generally, "[w]hether a particular type of information constitutes a trade secret is a question of fact." (Citation omitted.) *Insight Technology v. FreightCheck*, 280 Ga. App. 19, 27 (3) (633 SE2d 373) (2006).

After review of One Sixty's complaint in view of "the liberal notice pleading requirements codified at OCGA § 9-11-8 (a) (2) (A)," we cannot find that the Board has demonstrated that One Sixty "*could not possibly* introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." (Citation omitted; emphasis supplied.) *Depository Trust*, supra, 348 Ga. App. at 477 (1). Rather,

> the objective of the Civil Practice Act is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details.

(Emphasis omitted.) Id.; see also *Osprey Cove Real Estate v. Towerview Constr.*, 343 Ga. App. 436, 443 (6) (808 SE2d 425) (2017); *Campbell v. Ailion*, 338 Ga. App. 382, 384-385 (790 SE2d 68) (2016) ("the Georgia Civil Practice Act requires only notice pleading and … pleadings are to be construed liberally and reasonably to achieve substantial justice.…" (citation and punctuation omitted)). Instead, "basic discovery

should eliminate any uncertainty about [One Sixty's] claims." (Citation omitted.) *Depository Trust*, supra, 348 Ga. App. at 477 (1). For example, discovery may establish that One Sixty's webcast and on-campus presentations included information which had already been designated as confidential in its proposal and that the prior designation, coupled with UGA's representation that it would treat One Sixty's information as confidential, were reasonable measures under the circumstances to maintain the secrecy of One Sixty's information. See OCGA § 10-1-761 (4); *Insight Technology*, supra, 280 Ga. App. at 27 (3) ("Whether a particular type of information constitutes a trade secret is a question of fact.") (citation omitted); but see *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 876-877 (2) (482 SE2d 498) (1997) (on summary judgment, company's efforts to protect trade secrets, including execution of employee confidentiality agreements and password protection, from disclosure by employees it instructed to work for another company "were not reasonable"); *Equifax Svcs. v. Examination Mgmt. Svcs.*, 216 Ga. App. 35, 39-40 (2) (453 SE2d 488) (1994) (on summary judgment, company "failed to take reasonable steps to enforce its confidentiality agreement and ensure the continuing secrecy of the information . . . at issue" when it relied solely upon a confidentiality agreement signed by employees).

26

Accordingly, we affirm the trial court's denial of the Board's motion to dismiss for failure to state a claim.

In sum, we conclude that the Georgia Trade Secrets Act of 1990 does not contain either an express or implied waiver of sovereign immunity. However, a violation of the Trade Secrets Act constitutes a tort for which a litigant may pursue a claim against a state entity under the Tort Claims Act. In this case, when viewed in a light most favorable to One Sixty, we cannot say at this stage of the litigation that One Sixty "*could not possibly* introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." (Citation omitted; emphasis supplied.) *Depository Trust*, supra, 348 Ga. App. at 477 (1). Accordingly, for the foregoing reasons, we affirm the portion of the trial court's judgment that found no express or implied waiver of sovereign immunity in Case No. A19A0007. In Case No. A19A0006, we affirm the trial court's judgment that a litigant may bring a claim for violation of the Trade Secrets Act pursuant to the Tort Claims Act and that One Sixty sufficiently pled its claim to survive the Board's motion to dismiss for failure to state a claim for relief.

*Judgments affirmed. Rickman, J., concurs. Dillard, C. J., concurs in Divisions 1 and 2, and concurs in judgment only in Division 3.*

**\* DIVISION 3 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY.**

**COURT OF APPEALS RULE 22.2 (a).**