NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 3, 2022

S21G1005. MIMBS v. HENRY COUNTY SCHOOLS

LaGrua, Justice.

We granted certiorari in this case to decide whether the trial court properly granted summary judgment against Sheri Mimbs, a public school teacher, on the basis that Mimbs failed to institute her whistleblower action within one year after discovering the alleged acts of retaliation. See OCGA § 45-1-4 (e) (1).[1] For the reasons that follow, we conclude that Mimbs's complaint was timely with respect to one of the acts giving rise to her retaliation claim. Therefore, we reverse in part the judgment of the Court of Appeals affirming the trial court's grant of summary judgment to the school district, see

---

[1] OCGA § 45-1-4 (e) (1) provides: "A public employee who has been the object of retaliation in violation of this Code section may institute a civil action in superior court for relief as set forth in paragraph (2) of this subsection within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier."

*Mimbs v. Henry County Schools*, 359 Ga. App. 299, 302-303 (857 SE2d 826) (2021), and remand the case to the Court of Appeals with direction to remand to the trial court for further proceedings.

1.    Construed in the light most favorable to Mimbs as the non-moving party, the record shows that in November 2016, Mimbs was hired as a fifth-grade teacher at Cotton Indian Elementary School ("CIES") in Henry County for the remainder of the 2016-2017 school year. According to the principal and assistant principal of CIES, during the first few months of Mimbs's employment with Henry County Schools (the "School District"), administrators observed that Mimbs routinely failed to meet performance standards, despite training and other efforts to assist her.

In Mimbs's deposition, she testified that, in February 2017, she submitted progress report grades for her students, which included a number of zeroes for missing assignments. According to Mimbs, after the assistant principal received Mimbs's students' progress reports, the assistant principal advised Mimbs that students should not have a grade of "less than 60" in her class, and the failing grades

2

needed to be altered.[2] Mimbs objected to the assistant principal's directive to alter her students' grades, and according to Mimbs, the assistant principal then told Mimbs that she would be terminated if she did not modify the failing grades as instructed.

The principal met with Mimbs in February and March 2017 to address Mimbs's performance in the classroom, to discuss her students' grades, and to emphasize the importance of assisting students in completing assignments. According to Mimbs, when she met with the principal, Mimbs reported that the assistant principal had instructed Mimbs to change her students' grades or she would be terminated. Mimbs asserted that, in response, the principal advised her that no student could receive a failing grade and the grades needed to be altered.

On March 21, 2017, Mimbs met with a School District administrator in the Human Resources department and reported that the principal and assistant principal had asked Mimbs to

---

[2] The assistant principal testified in her deposition that when she spoke to Mimbs about the failing grades, her primary focus was to encourage Mimbs to assist her students in turning in their assignments on time.

"break the law" by changing her students' grades. According to the administrator, she advised the principal of Mimbs's claim, and the principal followed the proper protocol for addressing this grievance.

On or about April 24, 2017, the principal met with Mimbs and told her that the school would "not have a spot" for Mimbs for the upcoming school year. The principal then offered Mimbs the opportunity to resign in lieu of nonrenewal of her contract, which Mimbs refused. In her deposition, the principal testified that she did not have the authority to renew or not renew an employee's contract; she was simply tasked with advising the School District as to which CIES employees would be recommended for contract renewal for the following school year.

On April 26, 2017, Mimbs's attorney sent a certified letter to the School District, advising that his law firm had been hired to represent Mimbs regarding potential claims of retaliation under OCGA § 45-1-4 and that he understood Mimbs had been asked to resign her employment. Mimbs's attorney requested that all future communications regarding Mimbs's employment be directed to him.

4

On April 27, 2017, the Superintendent of the School District issued a letter regarding Mimbs's employment, stating that she had "not been recommended for contract renewal with the Henry County Board of Education for the 2017/2018 school year" and that her "employment with the school system will terminate at the conclusion of this school year." The Superintendent's April 27 letter was sent to and received by Mimbs's attorney on May 3, 2017.

Exactly one year later, on May 3, 2018, Mimbs filed a civil action against the School District under OCGA § 45-1-4, alleging that she was fired in retaliation for refusing to change her students' failing grades, for reporting her complaints to Human Resources and the principal, and for retaining counsel to pursue her claims. After the parties conducted discovery, the School District moved for summary judgment on a number of grounds, including that Mimbs's complaint was barred as a matter of law because she did not file it within the applicable one-year statute of limitation, see OCGA § 45-1-4 (e) (1).[3] Specifically, the School District contended that Mimbs's

_____

[3] The School District also moved for summary judgment under the theory

5

claim under OCGA § 45-1-4 was time-barred because, rather than accruing on May 3, 2017 when Mimbs received the Superintendent's April 27 termination letter, her claim accrued on or about April 24, 2017, when she was informed by the principal that there would not be a spot for her the following school year and she could resign.

The trial court granted summary judgment to the School District solely on the statute of limitation ground. In so ruling, the court observed that when Mimbs was deposed, she admitted that she "knew during the conversation with [the principal] that there would not be a spot for her in the following school year." The court determined that this admission, together with the April 26, 2017 letter from Mimbs's attorney, demonstrated that Mimbs had "discovered what she interpreted to be an adverse employment action as defined by [OCGA § 45-1-4], at least as of April 26, 2017." The court thus concluded that the filing of Mimbs's lawsuit on May 3, 2018, was "outside the one-year limitations period," and the

---

that Mimbs could not establish a prima facie case of retaliation, and even if she could, the School District had a legitimate, non-discriminatory reason for not renewing her employment contract.

6

School District was "entitled to summary judgment in its favor."

Mimbs appealed, contending that "the grant [of summary judgment] was in error because a question of fact remains as to whether the limitation period had run." *Mimbs*, 357 Ga. App. at 299. The Court of Appeals saw no error and affirmed the trial court, concluding that

> Mimbs'[s] own evidence showed that on April 24, 2017, the principal told her that her contract would not be renewed for the following year and gave her the option of resignation rather than non-renewal. It is also undisputed that the district had no input into and did not reconsider the principal's decision not to renew Mimbs'[s] contract. Rather, and only a few days later, the school district formalized that decision in writing. Mimbs thus received notice explaining an upcoming adverse employment action on April 24, 2017, when she learned that the principal had made a definitive decision to take adverse action against her, such that the one-year statute of limitation laid out in OCGA § 45-1-4 (e) (1) began to run.

Id. at 302 (citation and punctuation omitted). On this basis, the Court of Appeals held that "Mimbs filed her complaint more than one year after discovering the alleged retaliation against her," and "the trial court did not err when it granted summary judgment to

7

the school district on Mimbs'[s] whistleblower complaint." Id. at 302-303.

2. We granted Mimbs's petition for certiorari to determine whether the trial court erred in granting summary judgment to the School District on the basis that Mimbs failed to file her complaint within one year after discovering the alleged acts of retaliation. See OCGA § 45-1-4 (e) (1). To decide that issue, we look to the governing statute.

Under OCGA § 45-1-4 (d) (2) and (3), "[n]o public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency," and "[n]o public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." OCGA § 45-1-4 (a) (5) defines "retaliation" as

the discharge, suspension, or demotion by a public

8

employer of a public employee or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency.

In her complaint against the School District, Mimbs raised one count of retaliation under OCGA § 45-1-4. In that count, Mimbs alleges that she was instructed by the principal and assistant principal to change her students' grades in violation of OCGA § 20-2-989.20.[4] Mimbs further alleges that, after being so instructed, she engaged in protected activity by objecting to changing the grades, reporting the unlawful instructions to Human Resources and the principal, and retaining a lawyer. And, construing the evidence in the light most favorable to Mimbs, we conclude that Mimbs presented sufficient evidence in support of these allegations to raise a genuine issue of material fact on summary judgment. See *Nguyen v. Sw. Emergency Physicians, P.C.*, 298 Ga. 75, 82 (3) (779 SE2d 334)

---

[4] OCGA § 20-2-989.20 (a) provides that "[n]o classroom teacher shall be required, coerced, intimidated, or disciplined in any manner by the local board of education, superintendent, or any local school administrator to change the grade of a student."

9

(2015) ("On appeal from the grant of summary judgment, we construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences" and is "only required to present evidence that raises a genuine issue of material fact." (citation and punctuation omitted)).

Mimbs also claims that as a result of her protected activities, she suffered the following adverse employment actions: (1) a February 2017 threat from the assistant principal to terminate Mimbs if she did not alter her students' grades as instructed; (2) an April 2017 request from the principal that Mimbs resign; and (3) the termination of Mimbs's employment for the upcoming school year, of which she received written notice from the Superintendent on May 3, 2017. Based upon these allegedly adverse employment actions, Mimbs filed a lawsuit against the School District on May 3, 2018.

We must now decide whether the Court of Appeals erred in concluding that Mimbs's lawsuit arising from these three alleged adverse employment actions was not timely instituted under OCGA

§ 45-1-4 (e) (1). OCGA § 45-1-4 (e) (1) provides that the one-year statute of limitation period begins to run on the date that the alleged act of retaliation is discovered by the public employee. See id. See also *Tuttle v. Ga. Bd. of Regents of Univ. System of Ga.*, 326 Ga. App. 350, 353 (1) (a) (756 SE2d 585) (2014) (holding that where there was no dispute as to the date that the plaintiff discovered the retaliation at issue, the statute of limitation began to run on the date of the discovery).

Like the trial court, the Court of Appeals concluded that Mimbs suffered only one alleged adverse employment action – the non-renewal of her contract for the upcoming school year – and that she discovered this alleged act of retaliation on April 24, 2017, when "the principal told her that her contract would not be renewed for the following year and gave her the option of resignation rather than non-renewal." *Mimbs*, 359 Ga. App. at 302. The Court of Appeals also concluded that the written notice of termination, which was issued by the Superintendent on April 27, 2017 and received by Mimbs on May 3, 2017, merely "formalized that decision" not to

11

renew Mimbs's contract for the upcoming school year. Id.[5] We disagree.

The School District's formal termination of Mimbs's employment was separate and distinct from the first two acts alleged by Mimbs – i.e., the February 2017 threat of termination by the assistant principal and the April 2017 request for resignation by the principal – both in timing and context, as well as potential harm. Following those first two incidents and before any formal termination occurred, Mimbs could have resigned her employment with the School District – arguably resulting in the accrual of damages. And, as the School District's counsel has acknowledged, following the principal's request for Mimbs's resignation, the School District could have decided not to terminate Mimbs's employment for the upcoming school year, disregarding the principal's recommendation not to renew Mimbs's contract.

---

[5] The School District similarly argues that the written termination letter Mimbs received on May 3, 2017 merely formalized the April 2017 incident and should not be analyzed separately. The School District does not address the February 2017 incident alleged by Mimbs in her complaint.

Having reached this conclusion, we need not decide whether the first two incidents alleged by Mimbs constituted adverse employment actions under OCGA § 45-1-4 (a) (5) because Mimbs does not dispute that she discovered these actions at the time they occurred in February 2017 and April 2017. And, because Mimbs did not file her lawsuit against the School District until May 3, 2018, more than "one year after discovering the [alleged] retaliation," her complaint was time-barred as to these alleged acts of retaliation. OCGA § 45-1-4 (e) (1).

However, as to the third incident alleged by Mimbs – the School District's formal termination of Mimbs's employment for the upcoming school year – this kind of action clearly falls within the definition of an adverse employment action under OCGA § 45-1-4 (a) (5). See id. ("'Retaliate' or 'retaliation'" includes "the discharge . . . by a public employer of a public employee."). And, because Mimbs undisputedly received notice of the termination on May 3, 2017, her complaint was timely as to this alleged act of retaliation. See OCGA

13

§ 45-1-4 (e) (1).[6]

For these reasons, we conclude that the Court of Appeals erred in determining that Mimbs's lawsuit was filed outside the one-year limitations period set forth in OCGA § 45-1-4 (e) (1) with respect to her termination for the upcoming school year, which she discovered on May 3, 2017. Therefore, we reverse in part the judgment of the Court of Appeals with direction to remand to the trial court for further proceedings consistent with this opinion.

*Judgment reversed in part and case remanded with direction. All the Justices concur, except Colvin, J. disqualified.*

---

[6] Despite this ruling, some of us think it important to remind litigants that it is better to err on the side of caution in determining when to file a lawsuit, as waiting until the last day of the applicable statute of limitations period can often expand the litigation and lead to the unnecessary expenditure of judicial resources in ascertaining the timeliness of a party's claims.