## A94A1205. INTERNATIONAL TELECOMMUNICATIONS EXCHANGE CORPORATION v. MCI TELECOMMUNICATIONS CORPORATION.

### (448 SE2d 71)

BEASLEY, Presiding Judge.

Appellee MCI Telecommunications Corporation (MCI) sells long-distance telephone services to appellant International Telecommunications Exchange Corporation (INTEX) which in turn resells such services to providers such as Telnet Communications, Inc. (Telnet).

In this case, INTEX filed a complaint against Telnet in the State Court of DeKalb County for breach of a contract between INTEX and Telnet. INTEX seeks damages from Telnet, based on Telnet's failure to pay for approximately $276,000 in long-distance services provided by INTEX to Telnet on the MCI network.

Telnet answered and filed a counterclaim against INTEX on grounds that INTEX had breached the parties' contract by cancelling it because of INTEX's termination of a contract between INTEX and MCI. In its counterclaim, Telnet claims that as a result of INTEX's breach of contract, Telnet suffered damages consisting of lost revenue and profits because it lost numerous customers and had to cover its obligations to remaining customers by securing replacement long-distance services at greater expense.

INTEX thereafter filed a third-party complaint against MCI under OCGA § 9-11-14, alleging that any failure by INTEX to fulfill its obligations to Telnet was caused by MCI's failure to fulfill its obligations to INTEX. INTEX sought to be indemnified by MCI for any damages it sustains as a result of Telnet's counterclaim.

MCI answered and moved to dismiss the third-party complaint under the abatement statute, OCGA § 9-2-44 (a), as well as OCGA § 9-2-5 (a), in that INTEX had made the identical claim against MCI as a counterclaim in a prior action by MCI against INTEX then pending in the State Court of Fulton County. In INTEX's counterclaim in MCI's action against it, INTEX sought "direct and consequential damages" in an unspecified amount as a result of MCI's damaging INTEX's relationships with its customers by failing to take the steps necessary to ensure that INTEX customers were "on-line."

The DeKalb State Court granted MCI's motion to dismiss INTEX's third-party complaint, finding that the claims asserted involve

the same issues and arise out of the same transaction as the claims asserted in the Fulton State Court action. We granted INTEX's application for interlocutory appeal.

"No plaintiff may prosecute two actions in the courts at the same time for the same cause of action and against the same party. . . . If two such actions are commenced at different times, the pendency of the former shall be a good defense to the latter." OCGA § 9-2-5 (a), supra. "[T]he pendency of a former action for the same cause of action between the same parties in the same or any other court having jurisdiction shall be a good cause of abatement." OCGA § 9-2-44 (a), supra. Whenever a pending suit for the same cause of action has been pled, abatement is required as a matter of law. *Cale v. Cale*, 160 Ga. App. 434, 436 (287 SE2d 362) (1981).

INTEX is prosecuting two actions against MCI. One, the Fulton counterclaim, is a direct action for damages based upon INTEX's loss of customers as a result of MCI's breach of contract. The other, the DeKalb third-party complaint, is a secondary action for indemnification based upon Telnet's loss of customers as a result of INTEX's breach of contract. The question is whether the Fulton counterclaim and the DeKalb third-party complaint are the same cause of action.

Both instances present issues of liability and damages. If, in the Fulton action, MCI is adjudged not liable for breach of its contract with INTEX, it could not be held liable to INTEX in the DeKalb action. Thus, there is a common issue of liability in each action. If, however, MCI is adjudged liable to INTEX for breach of contract in the Fulton action, MCI would not be foreclosed from maintaining in the DeKalb action that it is not liable for damages sustained by Telnet. MCI could argue that such damages are too remote. Thus, additional liability issues may be raised in the DeKalb action. Compare *Schoen v. Home Fed. Sav. &c. Assn. of Atlanta*, 154 Ga. App. 68 (267 SE2d 466) (1980), where the issues in two actions were identical. Additionally, the issue of damages in each action is different, in that the loss of customers by INTEX and the loss by Telnet constitute two different sets of events occurring between different parties and at different times. See *Poole v. Estfan*, 206 Ga. App. 510, 511 (2) (426 SE2d 61) (1992); *Burns v. Brickle*, 106 Ga. App. 150 (126 SE2d 633) (1962); compare *Ellis v. Kite*, 107 Ga. App. 237 (129 SE2d 547) (1963); *Jones v. Rich's, Inc.*, 81 Ga. App. 841 (60 SE2d 402) (1950). In fact, INTEX's claim against MCI for indemnification did not accrue and could not have been asserted until Telnet filed the instant suit against INTEX in the DeKalb State Court. See *Ranger Constr. Co. v. Robertshaw Controls Co.*, 158 Ga. App. 179, 181-182 (279 SE2d 477) (1981). Although there are common issues in each action, the cause of action is not the same.

In this situation, the DeKalb court does have the discretionary

power to stay proceedings with respect to the third-party complaint pending adjudication of the liability issue in the Fulton action. See *Bloomfield v. Liggett & Myers, Inc.*, 230 Ga. 484, 485 (198 SE2d 144) (1973); *Commercial Union Ins. Co. v. Hoover Treated Wood Products*, 202 Ga. App. 35, 37 (413 SE2d 217) (1991). However, a mandatory dismissal or abatement is not authorized. The court's grant of MCI's motion for a dismissal, rather than a stay, is reversed.

*Judgment reversed. Andrews and Johnson, JJ., concur.*

DECIDED AUGUST 15, 1994.

*Meadows, Ichter & Trigg, Lauren S. Antonino, R. Wade Marionneaux, Jr.*, for appellant.

*Sutherland, Asbill & Brennan, William D. Barwick, Patricia A. Gorham, Lisa C. Foster*, for appellee.

A94A1275. BARRY v. THE STATE.
(448 SE2d 243)

BEASLEY, Presiding Judge.

Barry was convicted of six counts of cruelty to children. OCGA § 16-5-70 (a), (b). We view the evidence in the light most favorable to the verdict. It showed that Barry took her two-year-old son to an emergency room. His arm had a two- to three-week-old untreated spiral fracture. He also had an older rib fracture that had healed without treatment, burns on the back of his hands, and bruising about his head and face.

The emergency room physician testified that the broken arm would have been painful, swollen, and immobile and should have been treated immediately. He stated that Barry's explanation of the injury was inconsistent with the age of the break and that the injury could be produced by a twisting of the arm. He also testified that the rib fracture was six to eight weeks old, would have been painful for two or three weeks afterward especially if the child were picked up under his arms, and should have been treated.

Another emergency room physician testified similarly and also discussed the burns found on the child's hands. The burns were in a "grid" pattern and the physician stated that they could not have been caused by falling into a wall heater, as explained by Barry. This witness also testified that Barry stated she had contacted another physician who told her to put antibiotic cream on the burns, a treatment he did not consider reasonable.

A third physician, who saw the child approximately one month

after the emergency room visit, made similar observations and also reported that Barry gave different explanations for the arm fracture and hand burns. It was his opinion that the explanation given for the burns would be unlikely to produce the observed injuries.

Other witnesses testified that they saw injuries on the child. One stated that when she suggested Barry take the child to a doctor Barry said she was afraid "they would report her." Another witness reported seeing Barry pull the child to his feet by his arm. The testimony of a former boyfriend of Barry's, given at another proceeding, was introduced. He testified that when the child was taken to the hospital, Barry originally wanted to go to a different facility and was concerned about a report to the Department of Family & Children Services. The child had previously visited the hospital where the primary examination was done.

1. Barry contends that the court erred in allowing evidence of similar transactions without making specific findings on the record that the requirements of USCR 31.3 (B) had been met, as required by *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991). *Williams* requires the State to establish: 1) it seeks to introduce the evidence of similar transactions for an appropriate purpose; 2) there is sufficient evidence that the accused committed the acts; and 3) there is sufficient similarity between the acts so that proof of the former tends to prove the latter. Id. at 642 (2) (b). The court must make a determination that each of the three showings has been made, and this determination must be made a part of the record. Id. at 642 (2) (b), n. 3.

Barry does not contend that the State failed to establish any one of the three prerequisites, and the record reflects that all were addressed at the hearing. Rather, Barry contends that the court did not make a sufficient determination on the record that each part of the *Williams* test had been met. At the conclusion of the hearing on the admissibility of the similar transaction evidence, the State asked the court if it wished to make a finding on the record, to which the court responded: "Well, I think the Court of Appeals will be able to take note of the fact that I have, in fact, made a finding as to the three prongs." Without citing authority, Barry states that this is insufficient to establish the court's determination as part of the record.

The court's determination was sufficiently placed on the record. The elements required by *Williams* were addressed at the hearing, a question was addressed to the court about the three-part test, although *Williams* was not mentioned by name, and the court responded in a way that made it clear on the record that it was satisfied that the test had been met.

Additionally, had the court's perfection of the record been deficient, Barry waived her right to appeal any error by failing to object to the admission of the evidence at trial. See *Cole v. State*, 211 Ga.

App. 236, 238 (438 SE2d 694) (1993).

2. Barry contends it was error for the court to allow a transcript of the testimony of a witness to be read to the jury in lieu of live testimony. The witness was a former boyfriend who had lived with Barry and had testified at a prior juvenile deprivation hearing. OCGA § 24-3-10 allows such evidence when the witness is inaccessible. Barry contends that the State was not properly diligent in its search for the witness and therefore did not lay a foundation of inaccessibility.

The determination that a party's search for a witness is sufficiently diligent "is left to the sound discretion of the trial court, and its judgment will not be disturbed on appeal absent abuse. [Cits.]" *Johnson v. State*, 197 Ga. App. 384, 385 (1) (398 SE2d 432) (1990).

In this case the investigating officer testified that after the deprivation hearing he went to the witness' apartment twice, did not find him, and learned that he had moved. He asked an acquaintance of the witness to contact him if she saw the witness and later contacted her but she had not seen the witness. Based on all his inquiries, he did not believe the witness was in Georgia. The assistant district attorney also testified that a subpoena was sent to the record address and that, after a conversation with a person at Barry's residence, she secured a certificate of need and twice attempted service of the witness in Alabama. The court did not abuse its discretion in determining the State's efforts to be diligent and the witness to be inaccessible. See *Washington v. State*, 253 Ga. 173, 174 (4) (318 SE2d 55) (1984).

3. Barry contends the court erred in refusing to charge the jury that in order to find her guilty of maliciously failing to seek medical care for her son, she had to have actual knowledge of specific injuries requiring care. Three allegations in the indictment accused her of maliciously failing to seek medical care for her son, OCGA § 16-5-70 (b), and three accused her of maliciously causing her son pain by force, OCGA § 16-5-70 (a).

Barry's requested charge referred to "maliciously" failing to seek medical attention, but the cases she cited to support the charge refer to "wilfully depriving a child of necessary sustenance" as one of the bases under OCGA § 16-5-70 for finding a defendant guilty, along with maliciously causing pain. *Rigenstrup v. State*, 197 Ga. App. 176, 180 (4) (398 SE2d 25) (1990); *Lewis v. State*, 191 Ga. App. 287, 288 (1) (381 SE2d 558) (1989). *Lewis* does contain some language from which an inference could be made that "malice" requires actual knowledge, but the case is not precedential. Additionally, a more accurate analysis of *Lewis* is that actual knowledge of the injury in that case tended to show malice, but it was not a necessary element of that state of mind. *Rigenstrup* does not address actual knowledge of an injury and clearly does not require it as a necessary element of malice.

Barry points to no other authority for a requirement that actual

knowledge of an injury is a required element of malice under OCGA § 16-5-70, and we find none. "A request to charge itself must be correct, legal, apt, and precisely adjusted to some principle involved in the case. If *any portion* of the request is inapt or incorrect, denial of the request is proper." *Smith v. State*, 209 Ga. App. 540, 544 (5) (433 SE2d 694) (1993). The jury was charged on the meaning of malice.

DECIDED AUGUST 15, 1994.

*Scott J. Forster*, for appellant.

*T. Joseph Campbell, District Attorney, Rebecca B. Tierce, Assistant District Attorney*, for appellee.