**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 15, 2024**

# In the Court of Appeals of Georgia

A24A1758. IYER v. PRISM HSH PROPERTIES, LLC et al.

MERCIER, Chief Judge.

Madhu Iyer appeals from the trial court's order (1) granting final judgment to Madhu's ex-husband, Ganesan Iyer, and Prism HSH Properties, LLC ("Prism HSH") (collectively, "the appellees") on her claims for equitable relief and conversion, and (2) awarding the appellees attorney fees and litigation expenses. For reasons that follow, we reverse the entry of judgment for the appellees and vacate the award of attorney fees and litigation expenses.

The record shows that Madhu and Ganesan were divorced in February 2017 pursuant to a divorce decree that incorporated the parties' settlement agreement. The

agreement provided that Madhu would receive a 50 percent interest in Prism HSH, a real estate investment limited liability corporation owned by Ganesan, stating:

> [Ganesan] shall assign fifty percent (50%) of his interest [in Prism HSH] to [Madhu] and assist [Madhu] to be inducted as a member of the LLC within thirty (30) days from the execution date of this Agreement. [Ganesan] will remain the managing member for Prism HSH.

The agreement further provided:

> [T]he parties agree that each party shall receive 50% of net proceeds received from all dividends, sales or other income received from Prism HSH from the date of this Agreement forward. Such funds shall be directly disbursed by Prism HSH to the parties individually. If any capital calls or other funds [are] needed for the ownership interests, each shall pay fifty percent (50%) of those costs from the date of this Agreement forward. In the event of a sale of the ownership interest, the proceeds will be split fifty percent (50%) each, with each party paying its own share of taxes.

As required, Madhu became a 50 percent interest holder in Prism HSH following the divorce. Since that time, she has raised questions about the Prism HSH disbursements, asserting that Ganesan failed to distribute corporate proceeds to her, and, in 2020, Ganesan was found in contempt of the divorce decree for withholding

distributions. The 2020 contempt finding, however, did not resolve the ongoing dispute over corporate proceeds.

On September 10, 2021, Madhu filed the instant action against the appellees (the "business action"), asserting that because Ganesan had continually mismanaged the corporation and failed to distribute corporate proceeds, she was entitled to: (1) judicial dissolution of Prism HSH; (2) an injunction prohibiting Ganesan from conducting any corporate operations other than winding down the business; (3) an injunction prohibiting Ganesan from withholding future payments owed to Madhu; (4) an equitable accounting of Prism HSH's assets and liabilities; and (5) damages for conversion based on Ganesan's conduct in "tortiously convert[ing] [Madhu's] funds into his own possession[.]" A few days later, Madhu filed a new contempt action in connection with the divorce decree (the "2021 contempt action"), alleging that Ganesan had wilfully failed and/or refused to distribute Prism HSH proceeds to her. Madhu requested that Ganesan be held in contempt and "ordered to relinquish [her] 50% distribution payments from Prism HSH that are owed to her to date plus prejudgment and post-judgment interest[.]"

A bench trial in the business action commenced on February 8, 2024. During opening statements, the appellees moved to dismiss Madhu's claims, arguing that all issues should be resolved through the still-pending, divorce-related 2021 contempt action and that her effort to dissolve Prism HSH constituted "an improper collateral attack on [the] final [divorce] judgment." The appellees also requested an award of attorney fees and litigation expenses.

Following argument from both sides — and before Madhu had an opportunity to fully present her case — the trial court announced that it was granting the appellees' motion and "dismissing the [business action] in its entirety." In a subsequent written order that entered final judgment for the appellees, the trial court found that (1) Madhu's claims were subject to dismissal pursuant to the "first filed" rule codified at OCGA § 9-2-5 because substantially similar allegations remained pending in the 2021 contempt action; (2) the claims improperly sought to collaterally attack and modify the final judgment and decree of divorce; (3) Madhu had not stated a sufficient conversion claim; (4) Madhu failed to raise any disputed issues of material fact with respect to her request for an accounting; and (5) Madhu had not demonstrated the irreparable harm and injury necessary to establish a claim for

injunctive relief. Further concluding that Madhu's claims lacked substantial justification, were interposed for harassment, and needlessly expanded the proceedings, the trial court awarded the appellees $55,000 in attorney fees and litigation expenses under OCGA § 9-15-14 (b). This appeal followed.

1. Madhu argues that the trial court erred in dismissing the business action in favor of the 2021 contempt action pursuant to the "first filed" rule. We agree.

Under that rule:

> No plaintiff may prosecute two actions in the courts at the same time for the same cause of action and against the same party. If two such actions are commenced simultaneously, the defendant may require the plaintiff to elect which he will prosecute. If two such actions are commenced at different times, the pendency of the former shall be a good defense to the latter.

OCGA § 9-2-5 (a). See also OCGA § 9-2-1 (1) ("'Action' means the judicial means of enforcing a right.").

In other words, "when there are two lawsuits involving the same cause of action and the same parties that were filed at different times but that both remain pending in Georgia courts, the later-filed suit must be dismissed." *Bhindi Brothers v. Patel*, 275 Ga. App. 143, 145-46 (619 SE2d 814) (2005). A prior action, however, does not bar a

5

subsequent action where the claims in the second action "were not brought and could not have been brought" in the earlier suit. See *Doctors Hosp. of Augusta v. Dept. of Community Health*, 344 Ga. App. 583, 586 (1) (811 SE2d 64) (2018).

The parties dispute whether the business action or the 2021 contempt action was "first filed" in this situation. Although Madhu filed the contempt petition after the business suit, the appellees argue — and the trial court found — that it relates back to the earlier filed divorce proceeding. Regardless of which proceeding was filed first, however, OCGA § 9-2-5 does not bar the business action. Ultimately, "[c]ontempt is part of the judiciary's inherent power to enforce its orders." *Brown v. King*, 266 Ga. 890, 891 (1) (472 SE2d 65) (1996). A contempt application proceeds through "a motion and not a complaint." Id. To this end, Madhu requested that the trial court hold Ganesan in contempt of the divorce decree for failing to distribute funds that had accrued in Prism HSH, but had not been distributed, as of the date of the 2021 contempt petition.

The business action, on the other hand, alleged a tort claim to recover damages for conversion and sought equitable relief intended, among other things, to prevent *future* harm to Madhu's 50 percent interest in Prism HSH. Those claims not only

raised concerns about profit distribution, but asserted that Ganesan had mismanaged Prism HSH to Madhu's detriment and improperly converted her corporate funds for his own use. Appellees have not explained — and we fail to see — how tort and equitable claims seeking to recover damages allegedly caused by an LLC managing member's misconduct and curtail potential future mismanagement could have been alleged in a stand-alone contempt petition filed to enforce the divorce decree. See *Opatut v. Guest Pond Club*, 254 Ga. 258, 258 (1) (327 SE2d 487) (1985) ("[A]n application for contempt may not, standing alone, serve to commence a civil action for damages as it is not a complaint."); see also *Hardman v. Hardman*, 295 Ga. 732, 739-40 (4) (763 SE2d 861) (2014) (rejecting "anticipatory contempt" claim based upon mother's threat to breach divorce decree).

Although related and to some extent overlapping, the issues raised in the 2021 contempt action and the business action are not the same. See *Intl. Telecommunications Exchange Corp. v. MCI Telecommunications Corp.*, 214 Ga. App. 416, 417 (448 SE2d 71) (1994) (pending suits shared some common issues, but the causes of action were not the same because the later-filed action potentially raised additional liability issues and the two suits presented different issues regarding damages). The trial court, therefore,

erred in dismissing the business action pursuant to OCGA § 9-2-5.[1] See *Doctors Hospital of Augusta*, 344 Ga. App. at 586 (1); *Intl. Telecommunications Exchange Corp.*, 214 Ga. App. at 417.

2. Madhu argues that the trial court erred in characterizing the business action as an improper, collateral attack on the divorce decree. Again, we agree.

It is true that, once a settlement agreement is incorporated into a final divorce decree, "a party may not attack that judgment by seeking to change the settlement agreement." *Lockamy v. Lockamy*, 302 Ga. 111, 112 (805 SE2d 5) (2017). Instead, the party must challenge "the judgment itself through one of the acceptable means outlined in OCGA § 9-11-60." Id. These principals, however, do not apply in this case because the business action is not an "attack" on the divorce decree. Pursuant to the incorporated settlement agreement, Madhu became a 50 percent interest-holder in Prism HSH, with Ganesan holding the remaining 50 percent interest and serving as

---

[1] In their brief, the appellees assert that a final order was recently entered in the 2021 contempt action. They suggest that this final order resolves, renders moot, or precludes many of the claims in the business action. Because this argument has not been addressed below, we will not consider it on appeal. See *State v. Jennings*, 362 Ga. App. 790, 795 (1) (b) (869 SE2d 183) (2022) ("[A]s this Court is one for the correction of legal errors, we have no jurisdiction to address issues raised for the first time on appeal.").

managing member. Based on Madhu's corporate status, the business action requests tort and equitable relief to recover damages from alleged mismanagement of the corporation and prevent future mismanagement. Madhu is not trying to modify or set aside the divorce decree; she merely seeks to protect the corporate interest awarded to her in the divorce.

The divorce decree and settlement agreement do not preclude Madhu's lawsuit, limit her ability to protect her corporate rights, or prevent equitable relief relating to Prism HSH. And nothing requires that Prism HSH continue indefinitely in the same form. In fact, the settlement agreement anticipates that the corporation or its assets might be sold, establishing that Ganesan and Madhu would split any sales proceeds. The business action — brought to protect Madhu's corporate interest — is not a collateral attack on the decree. The trial court erred in finding otherwise. See *Zepp v. Toporek*, 211 Ga. App. 169, 171-172 (1) (d) (438 SE2d 636) (1993) (claimant's allegation that attorney breached a professional obligation by settling a lawsuit was not a collateral attack on the judgment entered following the settlement).

3. Although not completely clear, it appears that the trial court dismissed Madhu's conversion claim for failure to state a claim upon which relief can be granted. A motion to dismiss for failure to state a claim should only be granted if:

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

*Depository Trust & Clearing Corp. v. Jones*, 348 Ga. App. 474, 475 (823 SE2d 558) (2019) (citation and punctuation omitted).

Noting that a tort action cannot arise solely from the breach of a contractual duty, the trial court dismissed Madhu's conversion claim, concluding that it flowed from the appellees' "alleged failure to issue distributions" pursuant to the settlement agreement. See *Unified Svcs. v. Home Ins. Co.*, 218 Ga. App. 85, 87 (4) (a) (460 SE2d 545) (1995) (generally, "[i]f there is no liability except that arising out of a breach of

the express terms of the contract," the action must proceed in contract, rather than tort) (citation and punctuation omitted). The trial court's ruling, however, construes the conversion claim too narrowly. Viewed favorably to Madhu, the claim does not simply allege a failure to distribute money owed under the agreement. It asserts that, despite Madhu's request for payment, Ganesan mismanaged the Prism HSH funds, took her proceeds into his possession, and used that money to pay off his own personal debts.

The conversion claim is not restricted to non-payment of a contractual debt. It alleges intentional conduct by Ganesan to deprive Madhu of her money and keep the funds for himself. The trial court erred in dismissing the claim on this ground. See *Tidikis v. Network for Med. Communications & Research*, 274 Ga. App. 807, 811 (3) (619 SE2d 481) (2005) (tort of conversion "involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to [that other person's] rights.") (citation and punctuation omitted); *Faircloth v. A. L. Williams & Assoc.*, 206 Ga. App. 764, 766 (1) (426 SE2d 601) (1992) (recognizing that failure to pay money owed under a contract may support a conversion claim where allegations add something "beyond breach of contract").

4. The trial court dismissed Madhu's request for an accounting after finding that she did not raise an issue of material fact. It also concluded that she failed to prove the irreparable harm and injury needed to support a claim for injunctive relief. Neither ruling was proper.

(a) Because the trial court considered matters outside of the pleadings, its determination that Madhu failed to raise material issues of fact as to the accounting claim must be viewed as a summary judgment ruling. See OCGA § 9-11-12 (b) ("If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]"). Summary judgment is governed by OCGA § 9-11-56, which requires that various procedures be followed, including that a summary judgment motion be served thirty days before the trial court hears the motion. See OCGA § 9-11-56 (c); see also OCGA § 9-11-12 (b) (when a trial court converts a motion to dismiss into a motion for summary judgment by considering matters outside of the pleadings, "the motion shall be . . . disposed of as provided in Code Section 9-11-56, and all parties shall be given reasonable

opportunity to present all material made pertinent to such a motion by Code Section 9-11-56").

The trial court did not follow the necessary process here. Over Madhu's objection, the court directed her to immediately respond to an oral motion to dismiss made during the appellees' opening statement, issued an oral ruling granting the motion, then memorialized that ruling in a written order, revealing that it had considered matters outside of the pleadings. Madhu was not given an adequate opportunity to respond to or present evidence challenging the summary judgment proceeding, and we conclude that she was harmed by the process. The trial court's ruling on the accounting claim, therefore, must be reversed. See *Schwab v. Jackson*, 348 Ga. App. 457, 465 (1) (823 SE2d 546) (2019) (reversing judgment entered against defendant where trial court converted motion to dismiss into a summary judgment proceeding but failed to give defendant proper notice and a sufficient opportunity to respond).

(b) With respect to Madhu's claim for injunctive relief, the trial court determined — again, during opening statements and before Madhu was permitted to present her case — that she had failed to prove the claim. In essence, the trial court

13

granted the appellees a directed verdict on this allegation or, more appropriately given that this was a bench trial, an "involuntary dismissal on the grounds that upon the facts and the law the plaintiff has shown no right to relief[.]" *Rice v. Lost Mountain Homeowners Assn.*, 269 Ga. App. 351, 358 (8) (604 SE2d 215) (2004) (citation and punctuation omitted).

A directed verdict for a defendant or an involuntary dismissal in a bench trial may only be granted *following the close of the claimant's case*. See OCGA § 9-11-41 (b)("After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."); OCGA § 9-11-50 (a) (motion for directed verdict may be made at the close of the evidence offered by an opponent or at the close of the case). Because the trial court did not allow Madhu to present her case at trial, it erred in entering judgment for the appellees on her claim for injunctive relief.

5. Finally, Madhu challenges the trial court's decision to award attorney fees and litigation expenses to the appellees pursuant to OCGA § 9-15-14 (b), an award

that stemmed in large part from the dismissal of Madhu's claims and/or the entry of judgment in the appellees favor. As discussed above, we are reversing the trial court's dismissal order/entry of judgment in its entirety. The fee award based on that erroneous ruling, therefore, must be vacated. See *Brock v. C & M Motors*, 337 Ga. App. 288, 292 (2) (787 SE2d 259) (2016) (vacating attorney fee award based, at least in part, on an erroneous dismissal order).

*Judgment reversed in part and vacated in part. McFadden, P. J., and Rickman, J., concur.*